ANW 8.20.24
PR/LHUSAO#2023R00404

**SEALED**

SDC- BALTIMORE
24 AUG 21 PM 2:46

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>HUNTER HAITHCOCK,<br>a/k/a "HUNTER ELLIOTT,"<br><br>Defendant. | CRIMINAL NO. BAH 24cr248<br><br>(Wire Fraud, 18 U.S.C. § 1343; Investment Adviser Fraud, 15 U.S.C. §§ 80b-6 and 80b-17; Aggravated Identity Theft, 18 U.S.C. § 1028A(a)(1); Forfeiture, 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), 28 U.S.C. § 2461(c))<br><br>UNDER SEAL |

...oOo...

## INDICTMENT

### COUNTS ONE THROUGH THREE
(Wire Fraud)

The Grand Jury for the District of Maryland charges that:

**Introduction**

At times relevant to this Indictment:

1. Defendant **HUNTER HAITHCOCK, a/k/a HUNTER ELLIOTT ("HAITHCOCK"),** was a resident of Aberdeen, Maryland.

2. Victim investors S.R., K.H., and J.D. were residents of Maryland.

3. Company #1, an entity whose identity is known to the Grand Jury, was a retail brokerage of stocks, bonds, and other financial instruments.

4. Identity theft victim M.W. was a resident of Oak Park, Illinois. M.W. was a licensed securities broker with a uniquely assigned Financial Industry Regulatory Authority (FINRA) Central Registration Depository ("CRD") number. This CRD reflected M.W.'s status as a licensed securities broker. Beginning in or about February 2020 and continuing until in or about March 2021, M.W. was employed by Company #1.

1

5. Zelle was a digital payments network operated and owned by several financial institutions that allowed registered users to electronically transfer money from their bank account to another user's bank account within the United States using a mobile device or the website of a participating financial institution.

6. PayPal, Cash App and Venmo were mobile payment services that allowed money transfers from one registered user to another via a mobile telephone application or website. These services allowed users to electronically transfer money from their bank account to another user's bank account and to make payments to other users by credit card or debit card.

7. **HAITHCOCK** maintained two accounts at T.D. Bank N.A., a federally insured institution, one with an account number ending in 3303 (the "3303 Account") and another with an account number ending in 2729 (the "2729 Account").

8. **HAITHCOCK** maintained two accounts at Wells Fargo Bank N.A., a federally insured institution, one with an account number ending in 1968 (the "1968 Account") and another with an account number ending in 1820 (the "1820 Account").

**The Scheme to Defraud**

9. From in or about September 2019 and continuing thereafter until in or about October 2022, in the District of Maryland and elsewhere, the defendant,

**HUNTER HAITHCOCK,**

knowingly devised and intended to devise a scheme and artifice to defraud investors K.H., J.D. and S.R. and others to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute the scheme to defraud, did knowingly and willfully transmit and cause to be transmitted by means of wire communications, in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343 (the "scheme to defraud").

2

## Object of the Scheme to Defraud

10. It was the object of the scheme to defraud for **HAITHCOCK** to personally enrich himself by persuading investors, including victims K.H., J.D. and S.R. and others, to entrust **HAITHCOCK** with money by representing to them that **HAITHCOCK** would invest the money in securities and earn the investors a substantial profit, when in fact **HAITHCOCK** intended to use, and did use, the funds for his own personal use and benefit.

## Manner and Means of the Scheme to Defraud

11. It was part of the scheme to defraud that **HAITHCOCK**, falsely representing that his name was **HUNTER ELLIOTT**, approached investors, falsely representing to them that he worked as securities broker for Company #1, and offering to invest their money in securities.

12. It was further part of the scheme to defraud that **HAITHCOCK** falsely represented to investors that he worked with and for M.W. at Company #1 and that **HAITHCOCK** would be responsible for investing any money the investors entrusted to him.

13. It was further part of the scheme to defraud that **HAITHCOCK**, at times, used the personally identifiable information of M.W., including M.W.'s name and CRD number, when interacting with investors.

14. It was further part of the scheme to defraud that **HAITHCOCK** sent and caused to be sent to investors a document styled as a "Client Broker Agreement," bearing the name **HUNTER ELLIOTT** and the name of Company #1, that purported to govern the relationship between **him**, as a purported broker of Company #1, and the investor. The "Client Broker Agreement," at times, included the following statement above its signature line: "THIS AGREEMENT IS A NO LOSS GUARANTEE. MEANING THE INITIAL INVESTMENT IS SECURED AND AT ANY TIME THE MARKET HAS A CRASH THERE IS NO LOSS TO YOU."

15. It was further part of the scheme to defraud that on or about January 16, 2021,

3

**HAITHCOCK** sent and caused to be sent to S.R. a "Client Broker Agreement" via email. The email stated:

> Attached below is the contract.
> It's a basic agreement giving me (Hunter Elliott) as a Client under [Company #1] BROKER ([M.W]) to Invest YOUR money under brokerage portfolio.
> Amount is SET to $15,000 WITHDRAWAL LIMIT at first. We can discuss if you want to raise if course later (sic)
> HOW TO SIGN:
> - ILL SEND YOU A PERSONAL LINK TO SIGN.
> PAY DETAILS:
> - ZELLE OR PAYPAL AS PREFERENCE OR BANK TRANSFER.
> - You WILL receive a deposit confirmation
>
> I SENT UPDATE REPORTS EVERY MONDAY ON THE MAIN TRADES AND YOUR GROWTH ALONG WITH DETAILED ARTICLES ON THE TRADE SYMBOLS
>
> Thank you!
> -Hunter

16. It was further part of the scheme to defraud that **HAITHCOCK** caused investors to distribute monies intended to fund their investment accounts via cash provided to **HAITHCOCK**, Zelle, Cash App, Venmo, and wire transfer to various accounts controlled by **HAITHCOCK**, including the 3303 Account, the 2729 Account, the 1968 Account, and the 1820 Account.

17. It was further part of the scheme to defraud that **HAITHCOCK** attempted to use his relationship with investors that entrusted money to him to solicit additional funds from other investors in Maryland, including friends and relatives of the initial investors.

18. It was further part of the scheme to defraud that **HAITHCOCK**, at times, provided investors with fraudulent "Statement Reports" that purported to list, among other things, each investor's portfolio value and purported stock trades made by **HAITHCOCK**. In fact, these reports were false and fabricated.

19. It was further part of the scheme to defraud that on or about October 6, 2021, **HAITHCOCK** sent and caused to be sent to K.H. a purported "Statement Report" via email that

falsely indicated (1) the size of K.H.'s investment portfolio was $195,644.72; (2) the portfolio consisted of "Full Equity: 90%" and "Money Market: 10" and (3) the "WEEKLY TRADES" in the investment portfolio of various equity securities.

20. It was further part of the scheme to defraud that on or about April 7, 2022, **HAITHCOCK** sent and caused to be sent to J.D. a purported "Statement Report" via email that falsely indicated (1) that the size of J.D.'s investment portfolio was $167,163.93; (2) the portfolio consisted of "Options: 35%," "Short Options: 54%," and "Money Market: 11%" and (3) that falsely indicated "WEEKLY TRADES" in the investment portfolio of various equity securities.

21. It was further part of the scheme to defraud that, instead of investing investors' funds for their benefit as he had promised, **HAITHCOCK** spent the money for his own personal use, including paying expenses such as car payments, airplane tickets, restaurant purchases, entertainment expenses, and invested the funds for his own benefit.

22. It was further part of the scheme to defraud that **HAITHCOCK** engaged and attempted to engage in Zelle, Cash App, Paypal, Venmo, point-of-sale transactions, ATM withdrawals, and other financial transactions, including financial transactions that caused interstate wire communications that began and ended in Maryland.

23. It was further part of the scheme to defraud that **HAITHCOCK** engaged and attempted to engage in financial transactions in accounts at financial institutions, including the 3303 Account, the 2729 Account, the 1968 Account and the 1820 Account that received fraudulently obtained investor funds.

24. It was further part of the scheme to defraud that, after various investors demanded that **HAITHCOCK** return their money, **HAITHCOCK** ceased all communication with the investors.

25. It was further part of the scheme to defraud that the **HAITHCOCK** sent messages from a mobile device, including emails, iMessages, and text messages.

5

26. It was further part of the scheme to defraud that the **HAITHCOCK** obtained and attempted to obtain more than $600,000 in the aggregate from more than 50 investors through materially false and fraudulent pretenses, representations, and promises.

## THE CHARGES

27. On or about the dates set forth below, in the District of Maryland, and elsewhere, the Defendant,

### HUNTER HAITHCOCK

for the purpose of executing and attempting to execute the scheme and artifice to defraud described above, did knowingly transmit and cause to be transmitted in interstate commerce by means of a wire communication, certain signals, signs and sounds as set forth below:

| COUNT | DATE | DESCRIPTION | INTERSTATE WIRE COMMUNICATION DETAILS |
|---|---|---|---|
| 1 | January 16, 2021 | Email from **HAITHCOCK** to investor S.R. regarding "CLIENT BROKER AGREEMENT" | From Maryland to a location outside of Maryland |
| 2 | October 6, 2021 | Email from **HAITHCOCK** to investor K.H. regarding "REPORT" | From Maryland to a location outside of Maryland |
| 3 | April 7, 2022 | Email from **HAITHCOCK** to investor J.D. regarding "MONTHLY UPDATE" | From Maryland to a location outside of Maryland |

18 U.S.C. § 1343

6

## COUNT FOUR
### (Investment Adviser Fraud)

The Grand Jury for the District of Maryland further charges that:

1. The allegations set forth in paragraphs 1 through 8 and paragraphs 10 through 26 of Counts One through Three of the Indictment are hereby realleged and incorporated by reference as though fully set forth herein.

2. At times relevant to this Indictment, **HAITHCOCK** was an "investment advisor" within the meaning of 15 U.S.C. § 80b(2)(a)(11).

3. From in or about September 2019 and continuing thereafter until in or about October 2022, in the District of Maryland and elsewhere, the defendant,

**HUNTER HAITHCOCK,**

did unlawfully, willfully, and knowingly, by the use of the mails and means and instrumentalities of interstate commerce, directly and indirectly: (a) employ devices, schemes and artifices to defraud clients and prospective clients; (b) engage in transactions, practices, and courses of business that operated as a fraud and deceit upon clients and prospective clients; and, (c) engage in acts, practices, and courses of business that were fraudulent, deceptive and manipulative.

15 U.S.C. §§ 80b-6 and 80b-17

## COUNT FIVE
## (Aggravated Identity Theft)

The Grand Jury for the District of Maryland further charges that:

1. The allegations set forth in 1 through 8 and paragraphs 10 through 26 of Counts One through Three of the Indictment are hereby realleged and incorporated by reference as though fully set forth herein.

2. From in or about September 2019 and continuing thereafter until in or about October 2022, in the District of Maryland and elsewhere, the defendant,

**HUNTER HAITHCOCK,**

did, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), knowingly transfer, possess and use, without lawful authority, a means of identification of another person, knowing that the means of identification belonged to another person, to wit: the defendant used the means of identification of M.W. during and in relation to wire fraud under 18 U.S.C § 1343, as set forth in Counts One through Three of the Indictment.

18 U.S.C. §§ 1028A(a)(1), (c)(5)

## FORFEITURE

The Grand Jury for the District of Maryland further finds that:

1. Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), in the event of the defendant's conviction on the offense charged in Counts One through Four of this Indictment.

2. Upon conviction of the offense(s) set forth in Counts One through Four of this Indictment, the defendant,

### HUNTER HAITHCOCK,

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense(s), including but not limited to a forfeiture money judgment equal to the value of the proceeds the defendant obtained as a result of the offense(s), which amount is at least $600,000.

## SUBSTITUTE ASSETS

3. If, as a result of any act or omission of the defendant, any such property subject to forfeiture,

   a. cannot be located upon the exercise of diligence;

   b. has been transferred, or sold to, or deposited with a third person;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be subdivided without difficulty,

9

the United States shall be entitled to forfeiture of substitute property up to the value of the forfeitable property described above pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

18 U.S.C. § 981(a)(1)(C)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

EREK L. BARRON
United States Attorney

A TRUE BILL,

**SIGNATURE REDACTED**

Date: 08-21-24